IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ADAM LITCHFIELD,                    *

    Plaintiff,                        *

v.                                  *        Civil Action No. GLR-21-2101

RONALD S. RINEHART, et al.,         *

    Defendants.                       *

***

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Defendant Baltimore Police Department's ("BPD") Motion to Dismiss Complaint (the "BPD Motion") (ECF No. 22), Defendants Ronald S. Rinehart, Shante T. Reese, and Jason Lee's ("Officer Defendants") Motion to Dismiss Complaint (the "Officers' Motion") (ECF No. 23), and Defendant Maryland Department of Public Safety and Correctional Services' ("DPSCS") Motion to Dismiss the Complaint (the "DPSCS Motion") (ECF No. 24). The Motions are ripe for disposition and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons set forth below, the Court will grant the BPD Motion, grant in part and deny in part the Officers' Motion, and grant in part and deny in part the DPSCS Motion.

# I.   BACKGROUND[1]

## A.   <u>Factual Background</u>

On the evening of June 1, 2018 or the early morning of June 2, 2018, Plaintiff Adam Litchfield called BPD regarding his ex-girlfriend's unwanted arrival at his home. (Compl. ¶ 9, ECF No. 5). Officers Ronald Rinehart and Jason Lee responded to Litchfield's call for service. (<u>Id.</u> ¶ 10). Upon arrival, the Officers saw the ex-girlfriend outside of Litchfield's home and spoke with her. (<u>Id.</u> ¶¶ 11–12). Officers knocked on Litchfield's door and announced their presence. (<u>Id.</u> ¶ 13). Litchfield opened his front door, and Rinehart asked him what was going on. (<u>Id.</u> ¶¶ 14–15). Litchfield told Rinehart that he wanted his ex-girlfriend to leave his home. (<u>Id.</u> ¶ 16). Rinehart started talking to Litchfield and asked him how his ex-girlfriend got into his house. (<u>Id.</u> ¶ 17). Rinehart then asked Litchfield for his identification, but Litchfield refused and told Rinehart that Rinehart did not need to see Litchfield's identification. (<u>Id.</u> ¶¶ 18–19). Rinehart insisted on looking at Litchfield's identification, so Litchfield turned around to get his identification and attempted to shut the door behind him. (<u>Id.</u> ¶¶ 20–21). Then, Rinehart entered Litchfield's home. (<u>Id.</u> ¶ 22). Litchfield asked him to get out, but Rinehart did not. (<u>Id.</u> ¶¶ 23, 25).

While in Litchfield's home, Rinehart pushed Litchfield back. (<u>Id.</u> ¶ 24). Lee then entered Litchfield's home and tackled him onto a couch where Lee remained on top of Litchfield. (<u>Id.</u> ¶¶ 26–27). Lee told Litchfield that he was resisting, and Litchfield replied that he was not resisting. (<u>Id.</u> ¶ 28). While pinned down by Lee, Litchfield had both arms

---

[1] Unless otherwise noted, the Court takes the following facts from the Complaint and accepts them as true. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).

in the air, and Rinehart held them. (Id. ¶ 29). The Officers then put Litchfield on the floor and placed him in handcuffs. (Id. ¶ 30). Litchfield was charged with resisting or interfering with arrest. (Id. ¶ 45). In Rinehart's statement of probable cause, he reported that Litchfield hit his ex-girlfriend with the front door in his presence and that when Rinehart attempted to arrest Litchfield, Litchfield kicked him and tried to place him in a headlock. (Id. ¶¶ 47–48). Rinehart had his body worn camera on during the call for service, and Litchfield alleges that the footage does not support the events as portrayed in the statement of probable cause. (Id. ¶¶ 49–50). Litchfield does not specify how the events recorded by the camera differ from Rinehart's account.

Following the arrest, Litchfield complained of nausea and shoulder pain. (Id. ¶ 31). Officer Shante Reese transported Litchfield to the hospital. (Id. ¶ 32). While there, Litchfield's ex-girlfriend brought Litchfield's psychiatric medication to Reese. (Id. ¶ 34). Litchfield is on the autism spectrum and has a history of anxiety and depression. (Id. ¶ 34). During transport, Reese lost or misplaced Litchfield's medication. (Id. ¶ 35). Litchfield arrived at the Baltimore Central Booking and Intake Center ("BCBIC") and asked Reese if she was going to find his medication. (Id. ¶ 36). Litchfield asserts that Reese responded with something to the effect of "they will take care of you." (Id.).

Approximately six to seven hours after Litchfield's arrival at BCBIC, Litchfield's medications, Lexapro and Wellbutrin, wore off. (Id. ¶ 38). Litchfield took these medications for years, and they are "designed to be tapered off of gradually." (Id. ¶¶ 38–39). Thus, Litchfield experienced withdrawal and suffered panic attacks in BCBIC. (Id. ¶ 39). He brought his condition to the attention of the guards. (Id.). Litchfield was

eventually taken to the nurse station at BCBIC, and the nurse told him that he could not receive his medication until the medication was "confirmed." (Id. ¶ 40). On Litchfield's second day at BCBIC, they provided him with Lexapro but not Wellbutrin. (Id.). Litchfield had taken Wellbutrin consistently for ten years. (Id.).

Litchfield reports experiencing severe anxiety and feelings of hopelessness throughout his time at BCBIC. (Id. ¶ 42). Litchfield recalls being in the fetal position on the floor in his cell while the guards were screaming at him to calm down. (Id. ¶ 41). On his second day at BCBIC, Litchfield attempted suicide in his cell by hanging himself by his arm sling. (Id. ¶ 43). Litchfield's Complaint does not explain whether Litchfield was injured because of the attempted hanging. Litchfield stayed at BCBIC for approximately three days, as he was arrested late at night on June 1–2, 2018, and released late at night on June 4–5, 2018. (Id. ¶¶ 9, 45). Ultimately, Litchfield's charge was entered nolle prosequi in August 2018. (Id. ¶ 53).

**B.   Procedural History**

On June 1, 2021, Litchfield filed this action in the Circuit Court for Baltimore City. (ECF No. 5). Litchfield's counts involving Officer Defendants include Excessive Force by Rinehart (Count I); Excessive Force by Lee (Count II); Unreasonable Search and Seizure by Rinehart (Count III); Malicious Prosecution by Rinehart (Count V); and Malicious Prosecution by Reese (Count VI). (Compl. ¶¶ 60–77, 82–91). Litchfield's counts involving BPD are Monell Liability (Count IV) and Malicious Prosecution (Count VII). (Id. ¶¶ 78–81, 92–95). Litchfield's counts involving DPSCS are Negligence (Count VIII) and Denial of Necessary and Adequate Medical Care and Treatment (Count IX). (Id. ¶¶ 96–102).

4

Litchfield brings Counts I through IV and IX under the Fourth, Eighth, Ninth, and Fourteenth Amendments of the Constitution. (Id. ¶ 1). Litchfield cites Maryland common law as the basis for Counts V through VIII. (Id.). Litchfield seeks compensatory and punitive damages, attorney's fees and costs, and interest. (See id. at 9–16).[2]

Defendants removed the case to this Court on August 18, 2021. (ECF No. 1). On January 14, 2022, Defendants filed their respective Motions to Dismiss (ECF Nos. 22–24). Litchfield filed his Oppositions to Defendants' Motions on February 14, 2022, (ECF Nos. 27–29), and Defendants filed their Replies on February 28, 2022, (ECF Nos. 30–32).

## II.    DISCUSSION

### A.    <u>Standard of Review</u>

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>King v. Rubenstein</u>, 825 F.3d 206, 214 (4th Cir. 2016) (quoting <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556).

---

[2] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B.    Analysis**

**1.    Excessive Force (Counts I and II)**

In Counts I and II, Litchfield alleges that Rinehart and Lee subjected him to an unreasonable search and seizure in violation of the Fourth Amendment when they entered Litchfield's house, pushed him, tackled him, and held his arms in the air in a manner that caused him to suffer injuries to his shoulder. (Compl. ¶¶ 22–29, 31, 54, 60, 67). At bottom, the Court finds that the Complaint plausibly alleges that Rinehart and Lee used unconstitutionally excessive force and will decline to dismiss Counts I and II.

For § 1983 claims involving excessive force, the "analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386, 394 (1989). Then, the claim must be analyzed under the applicable constitutional standard. Id. Here, Litchfield brings his excessive force claims under the Fourth Amendment. (Compl. ¶¶ 60, 67).

The Fourth Amendment prohibits officers from using excessive force in making an arrest. See Graham, 490 U.S. at 387; Betton v. Belue, 942 F.3d 184, 191 (4th Cir. 2019). Any force used must be reasonable, balancing "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Graham, 490 U.S. at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)). A court analyzes whether the amount of force used was reasonable by assessing the totality of the circumstances, including "the severity of the underlying offense," "whether the suspect poses an immediate threat to the safety of the officer or others," and "whether the suspect is actively resisting arrest or attempting to evade arrest by flight." E.W. by and through T.W. v. Dolgos, 884 F.3d 172, 180–82 (4th Cir. 2018). As the Supreme Court has explained:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . The calculus of reasonableness must embody allowance for the fact that police officers are often required to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

Graham, 490 U.S. at 396–97.

As set forth in the Complaint, Litchfield called the police to request assistance with removing his ex-girlfriend from his house because she would not leave. (Compl. ¶ 9). After talking with Litchfield, Rinehart asked for Litchfield's identification. (Id. ¶¶ 13–18). Litchfield responded by telling Rinehart that he did not need his identification, but Rinehart insisted that he needed it and Litchfield eventually took steps to comply. (Id. ¶¶ 19–21). Litchfield went to retrieve his identification and attempted to close the front door behind him when Rinehart entered Litchfield's home. (Id. ¶¶ 21–22).

Litchfield asserts that Rinehart then entered his home and pushed him. (Id. ¶ 24). Lee then grabbed Litchfield and tackled him onto a couch. (Id. ¶ 26). Lee remained on top of Litchfield. (Id. ¶ 27). At some point, Lee told Litchfield that he was resisting, but Litchfield responded that he was not resisting. (Id. ¶ 28). While Lee was on top of Litchfield, Litchfield had both arms in the air, and Rinehart held them there. (Id. ¶ 29). As a result of these actions, Litchfield alleges that he experiences significant mental and physical pain. (Id. ¶¶ 31, 54). Accepting these factual allegations as true and construing them in the light most favorable to Litchfield, the Complaint states a claim that Rinehart's and Lee's use of force was excessive. Specifically, the Court finds that (a) Litchfield's alleged underlying offense was striking a victim with a door; (b) Litchfield alleges that he posed no threat to the officers or others at the time of the use of force; and (c) Litchfield alleges he was not resisting or attempting to evade arrest. Under these facts, pushing and tackling a suspect and holding his arms in such a way that causes a shoulder injury are not the actions of "a reasonable officer on the scene" and represent an unconstitutionally

excessive use of force. <u>Graham</u>, 490 U.S. at 396–97. The Court will thus decline to dismiss Counts I and II.

### 2.    Unreasonable Search and Seizure (Count III)

In Count III, Litchfield alleges that Rinehart entered his home without a search warrant, his consent, or probable cause, and then refused to leave the house when asked. (Compl. ¶ 74). Litchfield asserts that this conduct constituted an unreasonable search and seizure in violation of his Fourth Amendment rights. (<u>Id.</u>). At bottom, the Court finds that Litchfield has failed to state a claim against Rinehart for unreasonable search and seizure.

The Fourth Amendment protects individuals "against unreasonable searches and seizures." Similar standards apply to unreasonable search and seizure claims as to excessive force claims because both claims are brought under the Fourth Amendment. <u>See</u> <u>Garner</u>, 471 U.S. at 7–8 ("To determine the constitutionality of a seizure '[w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" (quoting <u>United States v. Place</u>, 462 U.S. 696, 703 (1983))).

Searches and seizures are "reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." <u>Devenpeck v. Alford</u>, 543 U.S. 146, 152 (2004). In evaluating whether probable cause exists, courts must look at "the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." <u>Id.</u> The "arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." <u>Id.</u> at 153. Thus, it is helpful to look at "the suspect's conduct as known to the officer, and the

contours of the offense thought to be committed by that conduct." Graham v. Gagnon, 831 F.3d 176, 184 (4th Cir. 2016) (quoting Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992)). Specifically, courts can consider the "information actually possessed by the officer[s] at the critical time, or that was reasonably available to [them], and in light of any exigencies of time and circumstance that reasonably may have affected the officer[s'] perceptions." Id. (quoting Pritchett, 973 F.2d at 312).

In the Court's view, the Complaint contains only conclusory allegations. Indeed, Litchfield baldly alleges that Rinehart lacked probable cause without providing factual support for this legal conclusion. (See Compl. ¶ 74). Litchfield acknowledges that Rinehart's statement of probable includes a report that Litchfield hit his ex-girlfriend with the front door. (Id. ¶ 47). In addition, while attempting to arrest Litchfield, Rinehart reports that Litchfield kicked him and attempted to place him in a headlock. (Id. ¶ 48). Litchfield broadly asserts that body camera footage capturing the events of that evening "does not support Officer Rinehart's version of events," (id. ¶¶ 49–50), but Litchfield does not offer any facts to contradict Rinehart's statement of probable cause. For instance, Litchfield does not allege that he never hit his ex-girlfriend with the door, kicked Rinehart, or attempted to put him in a headlock.[3] The Court is thus left only with the statement of probable cause

---

[3] Litchfield does include such allegations in his Opposition to the Officer Defendants' Motion to Dismiss. (See Pl.'s Mem. Law Opp'n Officer Defs.' Mot. Dismiss Compl. ["Opp'n to Officers"] at 10 n.7, ECF No. 27-1). But Litchfield is "bound by the allegations contained in [his] complaint and cannot, through the use of motion briefs, amend the complaint." Zachair, Ltd. v. Driggs, 965 F.Supp. 741, 748 n.4 (D.Md. 1997), aff'd, 141 F.3d 1162 (4th Cir. 1998). Accordingly, the Court may not consider these allegations in ruling on the Motions before it.

and Litchfield's vague claim that one or more assertions in the statement of probable cause are contradicted by the body camera footage. Without more, Litchfield's broad and conclusory assertion regarding the body camera footage is insufficient to plausibly allege that Rinehart lacked probable cause when he entered Litchfield's home. Accordingly, Litchfield fails to allege that Rinehart's conduct constituted an unreasonable search and seizure. The Court will therefore dismiss Count III.

### 3.    <u>Monell</u> Liability Under § 1983 (Count IV)

Litchfield avers that BPD failed to establish and implement policies, practices, and procedures to ensure that the Officer Defendants would not violate Litchfield's constitutional rights. (Compl. ¶ 78). Also, Litchfield argues that BPD failed to adequately train its officers. (<u>Id.</u> ¶ 79). As a result, Litchfield contends that BPD was deliberately indifferent to the need to protect individuals' constitutional rights, including Litchfield's. (<u>Id.</u> ¶ 80). BPD argues that Litchfield fails to state a claim in Count IV because the Complaint is devoid of factual support for a <u>Monell</u> claim under § 1983. (<u>See</u> BPD Def.'s Mem. Law Supp. Mot. Dismiss Compl. ["BPD Mot."] at 6–12, ECF No. 22-1). The Court agrees with BPD and will dismiss the claim.

The Supreme Court has held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978). Only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." <u>Id.</u> "Section 1983 plaintiffs seeking to impose liability on a municipality

must, therefore, adequately [1] plead and prove the existence of an official policy or custom [2] that is fairly attributable to the municipality and [3] that proximately caused the deprivation of their rights." Jordan by Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994).

The allegations in the Complaint do not meet the standard set forth in Jordan by Jordan. See id. Although the Court acknowledges that "it will often be the case that a plaintiff lacks specific details regarding the municipal actor's internal policies and training procedures before discovery," Johnson v. Balt. Police Dep't, No. ELH-19-00698, 2020 WL 1169739, at *34 (D.Md. Mar. 10, 2020), Litchfield does not even approach the bare minimum to state a plausible Monell claim. For instance, Litchfield does not provide a BPD policy or custom as a basis for his Monell claim. Rather, Litchfield broadly alleges that BPD "failed to establish and implement policies, practices[,] and procedures" and "inadequately trained its officers." (Compl. ¶¶ 78–79). These are precisely the type of conclusory statements this Court has found are insufficient to state a Monell claim for which relief may be granted. Compare, e.g., Peters v. City of Mount Rainier, No. GJH-14-955, 2014 WL 4855032, at *5 (D.Md. Sept. 29, 2014) (dismissing Monell claim where the plaintiff "has not even attempted to allege any [facts regarding the alleged failure to train]" but rather "simply stated in broad, conclusory terms and in a variety of different ways that the City failed to train and supervise its officers"), and Hall v. Fabrizio, No. JKB-12-754, 2012 WL 2905293, at *2 (D.Md. July 13, 2012) (dismissing a failure to train claim against the BPD where the complaint "d[id] not . . . allege a single instance of these alleged violations other than Plaintiff's own experience, and thus falls well short of showing the sort of 'widespread and permanent practice' that is required to show a municipal

'custom'"), with Jones v. Jordan, No. GLR-16-2662, 2017 WL 4122795, at *6 (D.Md. Sept. 18, 2017) (denying motion to dismiss where the plaintiff "allege[d] that BPD 'relies on deficient training on a broad array of substantive policing functions' and 'numerous important topics,' specifically pointing to lack of 'proper[] train[ing]' on 'use of force,' 'de-escalation,' 'stops, searches, and arrests,' and 'how to supervise and investigate misconduct'"). The Court will not permit such conclusory allegations to survive a motion to dismiss. Accordingly, the Court will dismiss Count IV.

### 4.   Malicious Prosecution (Counts V–VII)

Next, Plaintiff asserts claims of claims of malicious prosecution against Rinehart, Reese, and BPD (Counts V, VI, and VII, respectively). Officer Defendants argue that Litchfield failed to prove one of the essential elements of malicious prosecution, lack of probable cause, while BPD argues that it is immune from common law tort claims like malicious prosecution. (See Officer Def.'s Mem. Law Supp. Mot. Dismiss Compl. ["Officers' Mot."] at 14–16, ECF No. 23-1; BPD Mot. at 4–5). At bottom, the Court agrees that Litchfield fails to sufficiently assert claims of malicious prosecution.

Malicious prosecution is a tort that allows individuals to recover damages from those "who had initiated or caused the initiation of criminal proceedings despite having 'no good reason to believe' that criminal charges were 'justified by the facts and the law.'" Thompson v. Clark, 142 S.Ct. 1332, 1338 (2022) (quoting T. Cooley, Law of Torts 180 (1880)). There are three elements for a malicious prosecution claim under 42 U.S.C. § 1983: "(i) the suit or proceeding was instituted without any probable cause; (ii) the motive in instituting the suit was malicious . . . ; and (iii) the prosecution terminated in

the acquittal or discharge of the accused." Id. (citing Cooley at 181) (internal quotation marks omitted). "[A] Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence," but only "that the criminal prosecution ended without a conviction." Id. at 1341.

These elements are similar to the Maryland common law standard, which provides that a plaintiff must prove: "1) a criminal proceeding instituted or continued by the defendant against the plaintiff; 2) without probable cause; 3) with malice, or with a motive other than to bring the offender to justice; and 4) termination of the proceeding in favor of the plaintiff." Candelero v. Cole, 831 A.2d 495, 500 (Md.Ct.Spec.App. 2003) (quoting Heron v. Strader, 761 A.2d 56, 59 (Md. 2000)). Malice may be inferred from the lack of probable cause despite being an element of the tort. Talley v. Anne Arundel Cnty., No. RDB-21-347, 2021 WL 4244759, at *12 (D.Md. Sep. 12, 2021) (quoting DiPino v. Davis, 729 A.2d 354, 374 (Md. 1999)).

### a.   Officer Defendants (Counts V and VI)

In Count V, Litchfield alleges that Rinehart's statement of probable cause, in which Rinehart falsely alleged that Litchfield "kicked [Rinehart] and grabbed his head in an attempt to place [him] in a headlock" while Rinehart arrested Litchfield, resulted in Litchfield's resisting or interfering with arrest charge. (Compl. ¶¶ 46, 48, 82). While Litchfield alleges that he said he was not resisting arrest at the time of the incident, (see id. ¶ 28), he does not substantively contradict the facts in Rinehart's statement of probable cause. Thus, similar to the unreasonable search and seizure claim, the Court is left only

with Litchfield's conclusory allegation that Rinehart lacked probable cause for the arrest. (See id. ¶ 83). As set forth above, plaintiffs in this Court may not substitute conclusions of law for statements of fact. Litchfield has not provided factual allegations to support his claim that Rinehart lacked probable cause to arrest him. He has therefore failed to introduce facts supporting an essential element of a malicious prosecution claim. Accordingly, Count V must be dismissed.[4]

As to Count VI, Litchfield contends that Reese authored the statement of probable cause indicating that Rinehart reported seeing Litchfield assault his ex-girlfriend and that Litchfield kicked Rinehart and attempted to place him in a headlock. (Compl. ¶¶ 47, 48). The Court notes, however, that Reese did not respond to the scene with the other Officer Defendants. (See id. ¶ 10). Litchfield argues that Reese lacked probable cause to pursue charges against him because in drafting her statement of probable cause, Reese ignored the body worn camera footage of the incident, which contradicted Rinehart's recitation of events. (Id. ¶¶ 50, 88–89). But Reese was permitted to base a statement of probable cause on reliable hearsay statements. See United States v. Sykes, No. 5:15-CR-00184-FL-5, 2016 WL 8291220, at *11 (E.D.N.C. Aug. 22, 2016). The Complaint contains no allegations indicating why Reese should have believed that Rinehart was not a reliable source for the

---

[4] The Court notes that Litchfield has alleged facts sufficient to make out the other elements of a malicious prosecution claim against Rinehart. As the Court notes above, a lack of probable cause can be used to show malice. See Talley, 2021 WL 4244759, at *12. Litchfield also alleges that the charge against him was entered nolle prosequi, which represents a termination in his favor. (Compl. ¶¶ 53, 84); see Hines v. French, 852 A.2d 1047, 1057 (Md.Ct.Spec.App. 2004) ("A nol pros acts as a dismissal and, thus, the prosecution of appellant . . . ended in her favor.").

statement of probable cause. Litchfield thus fails to introduce facts for why Reese lacked probable cause. Accordingly, Count VI must be dismissed.

> **b.     BPD as a Defendant (Count VII)**

With respect to Count VII, as a state agency, BPD is immune from state common law torts and state constitutional torts.[5] See Nicholson v. Balt. Police Dep't, No. DKC-20-3146, 2021 WL 1541667, at \*9 (D.Md. Apr. 20, 2021). Thus, Count VII fails to state a claim upon which relief can be granted and must be dismissed.

> **4.     Common Law Negligence (Count VIII)**

Litchfield asserts that the staff and guards at BCBIC, as agents and employees of DPSCS, negligently breached the duty of care owed to him by failing to provide Litchfield with his medications and/or transfer him to receive his medication. (Compl. ¶¶ 96–97). DPSCS argues that it is entitled to sovereign immunity and, in any event, was not negligent in the care it provided Litchfield. (DPSCS's Mem. Law Supp. Mot. Dismiss Compl. ["DPSCS Mot."] at 9–11, ECF No. 24-1).

State sovereign immunity "is a broad[] doctrine that 'bars all claims by private citizens against state governments and their agencies, except where Congress has validly abrogated that immunity or the state has waived it.'" Williams v. Morgan State Univ., 850

---

[5] While Litchfield concedes this claim cannot prevail against BPD, he notes that under the Local Government Tort Claims Act, Md. Code Ann., Cts. & Jud. Proc. § 5-301 ("LGTCA"), BPD may later be subject to indemnification if he is successful in Counts V and VI against Rinehart and Reese. (See Opp'n to BPD at 7 n.1). Litchfield is correct, and this Opinion should not be read to preclude him from pursuing indemnification should he prevail on a claim entitling him to indemnification. Regardless, the malicious prosecution claim against the BPD must be dismissed.

F.App'x 172, 174 (4th Cir. 2021) (quoting Passaro v. Virginia, 935 F.3d 243, 247 (4th Cir. 2019)). "[T]he States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today." Id. (quoting Alden v. Maine, 527 U.S. 706, 713 (1999)). Courts in Maryland apply a two-part test to determine whether sovereign immunity applies in a specific case: "(1) whether the entity asserting immunity qualifies for its protection; and, if so, (2) whether the legislature has waived immunity, either directly or by necessary implication, in a manner that would render the defense of immunity unavailable." Stern v. Bd. of Regents, Univ. Sys. of Md., 846 A.2d 996, 1001 (Md. 2004) (quoting ARA Health Servs. Inc. v. Dep't of Pub. Safety & Corr. Servs., 685 A.2d 435, 438 (Md. 1996)).

There is no question that DPSCS is an arm of the state generally protected by sovereign immunity. See Md. Code Ann., Corr. Servs. § 2-101; Clark v. Md. Dep't of Pub. Safety & Corr. Servs., 316 F.App'x 279, 282 (4th Cir. 2009) ("[T]he Maryland Department of Public Safety and Correctional Services is undoubtedly an arm of the state . . . ."). Thus, the Court must decide whether the Maryland legislature has waived immunity as to Litchfield's claims by enacting the Maryland Tort Claims Act, Md. Code Ann., State Gov't ("SG") § 12-101 et seq. ("MTCA"). "[T]he question of waiver of sovereign immunity by a state constitutional provision or statute is a matter of state law, 'as to which the decision of the [state's highest court] is controlling.'" Lee-Thomas v. Prince George's Cnty. Pub. Sch., 666 F.3d 244, 249 (4th Cir. 2012) (quoting Palmer v. Ohio, 248 U.S. 32, 34 (1918)). The Court of Appeals of Maryland has held that no suit can be maintained against the State "unless the General Assembly has specifically waived the doctrine" of sovereign

immunity. Stern, 846 A.2d at 1001. Maryland courts "have strictly construed such waivers in favor of the sovereign." Bd. of Educ. of Balt. Cnty. v. Zimmer-Rubert, 973 A.2d 233, 240 (Md. 2009) (quoting Lizzi v. Washington Metro. Area Transit Auth., 156 Md. App. 1, 9, 845 A.2d 60, 65 (2003)). Thus, courts read statutory waiver language "narrowly in order to avoid weakening the doctrine of sovereign immunity by judicial fiat." Stern, 846 A.2d at 1012–13.

Negligence, the basis of Count VIII, is a tort claim. The MTCA limits the State's waiver of immunity to torts committed by "[s]tate personnel" that do not involve malice or gross negligence, and which are committed "within the scope of the public duties of the State personnel." SG § 12-104(b); Md. Code Ann., Cts. & Jud. Proc. § 5-522(a)–(b).

DPSCS argues that it is entitled to sovereign immunity because Litchfield has not alleged that the torts against him were committed by State personnel. (DPSCS Mot. at 11). The Court disagrees. DPSCS effectively tries to alter Litchfield's pleadings by strongly implying that the individuals responsible for Litchfield's care were employed not by the State, but by the State's contractual medical provider. (See id.). That may well be true, but on a Rule 12(b)(6) motion, the Court is obligated to assume the truth of all plausible allegations in the Complaint. Here, Litchfield alleges that nurses and guards at BCBIC breached their duty of care to him and that those individuals were employed by DPSCS. (See Compl. ¶¶ 37–43, 96–97). Thus, the Court does finds that DPSCS is not entitled to sovereign immunity at this early stage of the litigation based on the allegations in the Complaint.

The Court next turns to considering whether Litchfield has adequately pleaded his claim of negligence. A properly pleaded claim of negligence includes four elements: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the defendant's breach of the duty proximately caused the loss or injury suffered by the plaintiff, and (4) that the plaintiff suffered actual loss or injury." Troxel v. Iguana Cantina, LLC, 29 A.3d 1038, 1049 (Md.Ct.Spec.App. 2011). Here, Litchfield alleges that DPSCS owed him a duty of care. (Compl. ¶ 96). DPSCS argues, albeit somewhat indirectly, that it discharged that duty by hiring a private entity to provide care to inmates like Litchfield. (See DPSCS Mot. at 10–11). But this argument is premised on facts outside the bounds of the Complaint. Litchfield alleges that DPSCS nurses and guards were responsible for his care and breached the duty of care they owed him. (Compl. ¶ 97). At the pleading stage, this is sufficient to establish the first element of a negligence claim.

DPSCS next argues that the care medical personnel provided Litchfield was reasonable and, as a result, they did not breach any duty they owed him. (DPSCS Mot. at 10–11). The Court disagrees. Litchfield alleges that he took a combination of Lexapro and Wellbutrin for years, and he had not been off Wellbutrin in ten years. (Compl. ¶¶ 38, 40). After arriving at BCBIC, his psychiatric medication wore off after six to seven hours. (Id. ¶ 38). As a result, Litchfield experienced Selective Serotonin Reuptake Inhibitor ("SSRI") withdrawal and had panic attacks. (Id. ¶ 39). Litchfield "brought his condition to the attention of the guards" and made "repeated requests" for his medication. (Id. ¶¶ 39, 52). A nurse informed Litchfield that she could not give him his medication until it was

"confirmed." (Id. ¶ 39). The nurse administered Lexapro to Litchfield but not Wellbutrin. (Id. ¶ 40). Rather than transfer Litchfield to a medical facility, he was returned to his jail cell. (Id. ¶ 41). Litchfield describes "being in the fetal position in his jail cell on the floor and guards were screaming at him to calm down." (Id.). On his second day in jail, he "attempted to commit suicide in his jail cell by hanging himself with his arm sling." (Id. ¶ 43). Litchfield "has suffered from and continues to suffer from post-traumatic stress, increased anxiety, humiliation, indignity, increased depression and other mental pain . . . as a proximate cause of the above-referenced incidents." (Id. ¶ 54). In the Court's view, these allegations are sufficient to state a claim that DPSCS failed to recognize and treat a seriously sick person to whom they owed a duty of care and that, as a result, Litchfield suffered harm. Thus, these allegations sufficiently make out a claim for negligence under Maryland law. Accordingly, the Court declines to dismiss Count VIII.

### 5. Denial of Necessary and Adequate Medical Care and Treatment (Count IX)

Litchfield asserts that DPSCS "failed to establish and implement policies, practices[,] and procedures designed to assure that Litchfield received the medical treatment and care for his psychiatric condition," and that this conduct represented a deliberate interference to his medical needs in violation of his constitutional rights guaranteed by the Eighth, Ninth, Fourteenth Amendments. (Id. ¶¶ 99–101). Litchfield advances these claims against DPSCS under 42 U.S.C. § 1983. (Id. ¶ 1).

Section 1983 allows individuals to sue any "person" who violates their constitutional rights while acting under the color of law. But state agencies and state

officials acting within their official capacities cannot be sued under § 1983 because they are not "persons" under the statute. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989); Mayo v. Bd. of Educ. of Prince George's Cnty., 797 F.Supp.2d 685, 689 (D.Md. 2011), aff'd, 713 F.3d 735 (4th Cir. 2013). DPSCS is a state agency and therefore not a "person" subject to suit under § 1983. See Md. Code Ann., Corr. Servs. § 2-101; Clark, 316 F.App'x at 282 ("[T]he Maryland Department of Public Safety and Correctional Services is undoubtedly an arm of the state for purposes of § 1983" and therefore "immune from a suit under § 1983."). Accordingly, Count IX must be dismissed.

Recognizing that his federal constitutional claim against DPSCS cannot succeed, Litchfield requests in his Opposition that the Court grant him leave to amend the Complaint to replace the basis for Count IX with Article 24 of the Maryland Declaration of Rights. (Pl.'s Mem. Law Opp'n DPSCS' Mot. Dismiss Compl. ["Opp'n to DPSCS"] at 9–10, ECF No. 29-1). Litchfield's informal request to amend does not comport with the Federal Rules or the Local Rules of this Court. See Fed.R.Civ.P. 7(b); Local Rule 103.6 (D.Md. 2021); Hall v. JPMorgan Chase Bank, N.A., No. JKB-19-2510, 2020 WL 1452132, at *8 (D.Md. Mar. 25, 2020) ("Plaintiff did not file a motion or submit a proposed amended complaint; he merely expressed his wish to amend in his opposition brief. The Court will deny his request as procedurally improper.") (citing Saunders v. Keenan, No. JKB-15-1265, 2015 WL 4622492, at *1 (D.Md. July 31, 2015))). Nevertheless, inasmuch as the Court is already dismissing several of Litchfield's claims without prejudice to his ability to Litchfield's

ability to seek leave to amend, <u>see</u> <u>infra</u> Section II.C, it will proceed in a similar fashion with respect to Count IX.[6]

## C.    <u>Amendment</u>

As is evident in this Opinion, many of Litchfield's claims fail because the Complaint does not include certain allegations that Litchfield appears to assert are true in his briefs. The Court will thus dismiss Counts III–VI and IX without prejudice to Litchfield's ability to seek leave to amend under Federal Rule of Civil Procedure 15(a)(2) to cure the deficiencies in the Complaint identified herein. <u>See</u> <u>Weigel v. Maryland</u>, 950 F.Supp.2d 811, 825–26 (D.Md. 2013) ("When a plaintiff fails to state a claim, he 'should generally be given a chance to amend the complaint . . . before the action is dismissed with prejudice.' But dismissal with prejudice is proper if there is no set of facts the plaintiff could present to support his claim." (quoting <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 514 (2002)).

---

[6] DPSCS has argued that any such amendment would be futile because Litchfield's claims under Article 24 would fail on the merits. (DPSCS' Reply to Pl. Opp'n DPSCS Mot. at 4, ECF No. 32). To be sure, leave to amend a pleading is properly denied when amendment would prejudice the opposing party or amendment would be futile. <u>Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos</u>, 264 F.3d 424, 446 (4th Cir. 2001). Leave to amend is futile when an amended complaint could not survive a motion to dismiss for failure to state a claim. <u>See</u> <u>U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.</u>, 525 F.3d 370, 376 (4th Cir. 2008).

The Court declines to entertain DPSCS's argument at this time. <u>See</u> <u>ACA Fin. Guar. Corp. v. City of Buena Vista</u>, 917 F.3d 206, 218 (4th Cir. 2019) (finding that where plaintiffs' request to amend "never indicated what amendments they were seeking," "never identified any facts they sought to include in an amendment," and "never identified any cause of action they sought to add in an amendment," "there was no way for a district court to evaluate whether the proposed amendments were futile or not"). There is no pending motion for leave to amend before the Court. The Court anticipates that Litchfield will eventually file such a motion. If he does not, then DPSCS's argument is moot. If he does, and DPSCS chooses to oppose the motion, it can then present its futility argument with the benefit of a proposed amended complaint.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant the BPD Motion (ECF No. 22), grant in part and deny in part the Officers' Motion (ECF No. 23), and grant in part and deny in part the DPSCS Motion. (ECF No. 24). A separate Order follows.

Entered this 29th day of August, 2022.

_____/s/_____
George L. Russell, III
United States District Judge
