IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ADAM LITCHFIELD, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-21-2101 |
| RONALD S. RINEHART, et al., | * | |
| Defendants. | * | |

\*\*\*

**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on Defendant Baltimore Police Department's

("BPD") Motion to Dismiss (the "BPD Motion") (ECF No. 41), and Defendants Ronald S.

Rinehart and Jason Lee's ("Officer Defendants") Motion to Dismiss (the "Officer

Defendants' Motion") (ECF No. 45). The Motions are ripe for disposition, and no hearing

is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court

will grant BPD's Motion and deny the Officer Defendants' Motion.

## I.   BACKGROUND[1]

### A.   **<u>Factual Background</u>**

The Amended Complaint's facts are largely unchanged from the original Complaint,

which the Court summarized in its August 29, 2022 Memorandum Opinion as follows:

> On the evening of June 1, 2018 or the early morning of June 2,
> 2018, Plaintiff Adam Litchfield called BPD regarding his ex-
> girlfriend's unwanted arrival at his home. (Compl. ¶ 9, ECF
> No. 5). Officers Ronald Rinehart and Jason Lee responded to

---

[1] Unless otherwise noted, the Court takes the following facts from the Amended
Complaint and accepts them as true. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).

Litchfield's call for service. (Id. ¶ 10). Upon arrival, the Officers saw the ex-girlfriend outside of Litchfield's home and spoke with her. (Id. ¶¶ 11–12). Officers knocked on Litchfield's door and announced their presence. (Id. ¶ 13). Litchfield opened his front door, and Rinehart asked him what was going on. (Id. ¶¶ 14–15). Litchfield told Rinehart that he wanted his ex-girlfriend to leave his home. (Id. ¶ 16). Rinehart started talking to Litchfield and asked him how his ex-girlfriend got into his house. (Id. ¶ 17). Rinehart then asked Litchfield for his identification, but Litchfield refused and told Rinehart that Rinehart did not need to see Litchfield's identification. (Id. ¶¶ 18–19). Rinehart insisted on looking at Litchfield's identification, so Litchfield turned around to get his identification and attempted to shut the door behind him. (Id. ¶¶ 20–21). Then, Rinehart entered Litchfield's home. (Id. ¶ 22). Litchfield asked him to get out, but Rinehart did not. (Id. ¶¶ 23, 25).

While in Litchfield's home, Rinehart pushed Litchfield back. (Id. ¶ 24). Lee then entered Litchfield's home and tackled him onto a couch where Lee remained on top of Litchfield. (Id. ¶¶ 26–27). Lee told Litchfield that he was resisting, and Litchfield replied that he was not resisting. (Id. ¶ 28). While pinned down by Lee, Litchfield had both arms in the air, and Rinehart held them. (Id. ¶ 29). The Officers then put Litchfield on the floor and placed him in handcuffs. (Id. ¶ 30). Litchfield was charged with resisting or interfering with arrest. (Id. ¶ 45). In Rinehart's statement of probable cause, he reported that Litchfield hit his ex-girlfriend with the front door in his presence and that when Rinehart attempted to arrest Litchfield, Litchfield kicked him and tried to place him in a headlock. (Id. ¶¶ 47–48). Rinehart had his body worn camera on during the call for service, and Litchfield alleges that the footage does not support the events as portrayed in the statement of probable cause. (Id. ¶¶ 49–50). Litchfield does not specify how the events recorded by the camera differ from Rinehart's account.

Following the arrest, Litchfield complained of nausea and shoulder pain. (Id. ¶ 31). Officer Shante Reese transported Litchfield to the hospital. (Id. ¶ 32). While there, Litchfield's ex-girlfriend brought Litchfield's psychiatric medication to Reese. (Id. ¶ 34). Litchfield is on the autism spectrum and has a history of anxiety and depression. (Id. ¶ 34). During

transport, Reese lost or misplaced Litchfield's medication. (Id. ¶ 35). Litchfield arrived at the Baltimore Central Booking and Intake Center ("BCBIC") and asked Reese if she was going to find his medication. (Id. ¶ 36). Litchfield asserts that Reese responded with something to the effect of "they will take care of you." (Id.).

Approximately six to seven hours after Litchfield's arrival at BCBIC, Litchfield's medications, Lexapro and Wellbutrin, wore off. (Id. ¶ 38). Litchfield took these medications for years, and they are "designed to be tapered off of gradually." (Id. ¶¶ 38–39). Thus, Litchfield experienced withdrawal and suffered panic attacks in BCBIC. (Id. ¶ 39). He brought his condition to the attention of the guards. (Id.). Litchfield was eventually taken to the nurse station at BCBIC, and the nurse told him that he could not receive his medication until the medication was "confirmed." (Id. ¶ 40). On Litchfield's second day at BCBIC, they provided him with Lexapro but not Wellbutrin. (Id.). Litchfield had taken Wellbutrin consistently for ten years. (Id.).

Litchfield reports experiencing severe anxiety and feelings of hopelessness throughout his time at BCBIC. (Id. ¶ 42). Litchfield recalls being in the fetal position on the floor in his cell while the guards were screaming at him to calm down. (Id. ¶ 41). On his second day at BCBIC, Litchfield attempted suicide in his cell by hanging himself by his arm sling. (Id. ¶ 43). Litchfield's Complaint does not explain whether Litchfield was injured because of the attempted hanging. Litchfield stayed at BCBIC for approximately three days, as he was arrested late at night on June 1–2, 2018, and released late at night on June 4–5, 2018. (Id. ¶¶ 9, 45). Ultimately, Litchfield's charge was entered nolle prosequi in August 2018. (Id. ¶ 53).

(Aug. 29, 2022 Mem. Op. at 2–4, ECF No. 33). In the Amended Complaint, Litchfield

makes the following additions to the aforementioned facts:

- Litchfield's ex-girlfriend assaulted him before he called the police (Am. Compl. ¶ 8, ECF No. 40);

- He did not hit her with the door when she stepped out to speak with police, (id. ¶¶ 48–49), and Officer Rinehart was there to see this happen, (id. ¶ 50);

- Further, Litchfield did not kick or grab Officer Rinehart's head in an attempt to place him in a headlock, (id. ¶ 51); and

- the Statement of Probable Cause omits the fact that it was Officer Rinehart who initiated the physical confrontation, (id. ¶ 52).

Litchfield also attaches a 2021 report by the ACLU of Maryland ("ACLU Report") that contains BPD data showing that there were twenty-nine misconduct complaints filed by citizens against Officer Rinehart from 2015–2019 in eight separate incidents, and eight complaints of violence. (Am. Compl. ¶ 84; ACLU Report at 2–3, ECF No. 40-1).

**B.      Procedural History**

On June 1, 2021, Litchfield filed this action in the Circuit Court for Baltimore City against Rinehart, Lee, Reese, BPD, and the Maryland Department of Public Safety and Correctional Services ("DPSCS"). (ECF No. 5).

In the original Complaint, Litchfield's counts involving Officer Defendants were: Excessive Force by Rinehart (Count I); Excessive Force by Lee (Count II); Unreasonable Search and Seizure by Rinehart (Count III); Malicious Prosecution by Rinehart (Count V); and Malicious Prosecution by Reese (Count VI). (Compl. ¶¶ 60–77, 82–91). Litchfield's counts involving BPD were: Monell Liability (Count IV) and Malicious Prosecution (Count VII). (Id. ¶¶ 78–81, 92–95). Litchfield's counts involving the DPSCS were Negligence (Count VIII) and Denial of Necessary and Adequate Medical Care and Treatment (Count IX). (Id. ¶¶ 96–102).

Defendants removed the case to this Court on August 18, 2021. (ECF No. 1). On January 14, 2022, Defendants filed their first Motions to Dismiss (ECF Nos. 22–24). On August 29, 2022, the Court granted BPD's Motion, but it dismissed the <u>Monell</u> claim without prejudice as to Litchfield's ability to seek leave to amend. (Aug. 29, 2022 Order at 1, ECF No. 34). The Court granted in part and denied in part the Officers' Motion to Dismiss; it denied the Motion with respect to the excessive force claim and granted it without prejudice as to the claims for unreasonable search and seizure and malicious prosecution. (<u>Id.</u>). The Court also granted in part and denied in part DPSCS' Motion—the motion was granted without prejudice as to the denial of medical care claim and denied as to the negligence claim. (<u>Id.</u> at 2).

On September 19, 2022, Litchfield filed a Motion for Leave to File Amended Complaint. (ECF No. 35). The Court granted the Motion on April 17, 2023. (ECF No. 39). In the Amended Complaint, Litchfield abandons his claims against Reese and makes the following claims against Rinehart, Lee, BPD, and DPSCS: excessive force against Rinehart (Count I); excessive force against Lee (Count II); unreasonable search and seizure against Rinehart (Count III); a <u>Monell</u> claim against BPD (Count IV); malicious prosecution against Rinehart (Count V); negligence against DPSCS (Count VI); and denial of medical care against DPSCS (Count VII). (Am. Compl. ¶¶ 64–97). Litchfield seeks compensatory and punitive damages as well as attorney's fees. (<u>Id.</u> at 9–15).

DPSCS filed an Answer to the Amended Complaint on May 1, 2023. (ECF No. 42). That same day, BPD filed their Motion to Dismiss. (ECF No. 41). On May 15, 2023, Litchfield filed an Opposition, (ECF No. 46), and BPD filed a Reply on May 30, 2023,

(ECF No. 48). Officer Defendants filed their Motion to Dismiss on May 8, 2023. (ECF No. 45). Litchfield filed an Opposition on May 22, 2023, (ECF No. 47), and Officer Defendants filed a Reply on May 31, 2023, (ECF No. 49).

## II.    DISCUSSION

### A.    <u>Standard of Review</u>

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>King v. Rubenstein</u>, 825 F.3d 206, 214 (4th Cir. 2016) (quoting <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. <u>Goss v. Bank of Am., N.A.</u>, 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting <u>Walters v. McMahen</u>, 684 F.3d 435, 439 (4th Cir. 2012)), <u>aff'd</u>, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B.      Analysis**

**1.      BPD's Motion**

In Count IV of the Amended Complaint, Litchfield avers that BPD failed to establish and implement policies, practices, and procedures to ensure that the Officer Defendants would not violate Litchfield's constitutional rights. (Am. Compl. ¶ 82). Litchfield also argues that BPD deliberately failed to adequately train its officers on the use of force and searches and seizures, (id. ¶¶ 83, 85), so he was injured as a direct result of BPD's conduct, (id. ¶ 87). Litchfield offers the ACLU Report as evidence of BPD's alleged deficient policies and training. (Id. ¶¶ 84–85). The ACLU Report shows that there were twenty-nine misconduct complaints filed by citizens against Rinehart from 2015– 2019 in eight separate incidents, and eight complaints of violence. (Id. ¶ 84; ACLU Report at 2–5). BPD argues that Litchfield fails to state a Monell claim because his allegations lack specificity, and the ACLU Report does not show a widespread or permanent practice. (BPD Mot. at 8–10). The Court agrees with BPD and will grant its Motion to Dismiss.

The Supreme Court has held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. "Section 1983 plaintiffs seeking to impose liability on a municipality must, therefore, adequately [1] plead and prove the existence of an official policy or custom [2] that is fairly attributable to the municipality and [3] that proximately caused the deprivation of their rights." Jordan by Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994).

Additionally, to state a Monell claim for failure to train, "the plaintiff must allege facts that reveal: '(1) the nature of the training, (2) that the training was a 'deliberate or conscious' choice by the municipality, and (3) that the officer's conduct resulted from said training.'" McDowell v. Grimes, No. GLR-17-3200, 2018 WL 3756727, at *4 (D.Md. Aug. 7, 2018) (quoting Jones v. Chapman, No. ELH-14-2627, 2015 WL 4509871, at *18 (D.Md. July 24, 2015)).

Here, Litchfield broadly alleges "inadequate training" on the use of force and searches and seizures. (Am. Compl. ¶ 85). This Court has dismissed similar failure to train claims when a defendant failed to allege facts showing the nature of the officers' training. See McDowell, 2018 WL 3756727, at *4 (dismissing a Monell claim where BPD allegedly trained officers to "not arrest without probable cause, file false charges, and use excessive force against citizens.") (cleaned up); Peters v. City of Mount Rainier, No. GJH-14-955, 2014 WL 4855032, at *5 (D.Md. Sept. 29, 2014) (finding it insufficient to state "in broad,

8

conclusory terms and in a variety of different ways" that the police department "failed to train and supervise its officers."). Although the Court acknowledges that "it will often be the case that a plaintiff lacks specific details regarding the municipal actor's internal policies and training procedures before discovery," Johnson v. Balt. Police Dep't, No. ELH-19-00698, 2020 WL 1169739, at *34 (D.Md. Mar. 10, 2020), the Court finds Litchfields' allegations too broad and conclusory to establish the first element of a failure to train Monell claim.

Further, even if Litchfield had established the first element, his Monell claim would still fail because he has not shown that Rinehart's actions are fairly attributable to the municipality or that BPD consciously chose to deficiently train its officers. The ACLU Report shows, at best, that Rinehart was poorly trained, and that he was likely to illicit complaints of violence from civilians. Nevertheless, "even if 'a particular officer may be unsatisfactorily trained [, that] will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.'" Chapman, 2015 WL 4509871, at *18 (quoting City of Canton v. Harris, 489 U.S. 378, 390–91 (1989)). In other words, Litchfield has failed to provide additional facts about officers and incidents apart from Rinehart's conduct to show a "persistent and widespread" BPD training policy. See id. at *19.

In his Opposition, Litchfield cites Johnson in support of his argument that the ACLU Report provides sufficient facts to show deficient training. (Mem. L. Supp. Litchfield's Resp. Opp'n BPD's Mot. ["Opp'n BPD Mot."] at 5–6, ECF No. 46-1). In Johnson, the plaintiff alleged that officers violated his rights by suppressing exculpatory evidence and

prosecuting him for a murder he did not commit, and that they did so because of BPD's training. 2020 WL 1169739, at *1. This Court found that the plaintiff had adequately alleged a training defect because he recounted "twelve [similar] instances in which individuals were wrongfully convicted of murder, allegedly because BPD suppressed exculpatory evidence." Id. at *36.

The instant case can be easily differentiated from Johnson. The Johnson plaintiff presented facts of similar misconduct from different officers on twelve different occasions, where Litchfield merely alleges that Rinehart has been the subject of twenty-nine civilian complaints, and eight of those complaints broadly concerned violence. From these facts, the Court cannot infer that BPD has a widespread practice of training its officers to make arrests in the way that Rinehart arrested Litchfield. Accordingly, the Court will grant BPD's Motion and dismiss the Monell Claim.

### 2.  Officer Defendants' Motion

#### a.  Excessive Force (Counts I and II)

Officer Defendants move to dismiss Litchfield's excessive force claims again. (Officer Defs.' Mem. L. Supp. Mot. Dismiss ["Officer Defs.' Mot"] at 6, ECF No. 45-1). The Court previously determined that Litchfield "plausibly allege[d] that Rinehart and Lee used unconstitutionally excessive force" in his original Complaint. (Aug. 29, 2022 Mem. Op. at 6). The core facts of the excessive force claim are unchanged: Litchfield alleges that Rinehart and Lee subjected him to an unreasonable search and seizure in violation of the Fourth Amendment when they entered Litchfield's house, pushed him, tackled him, and held his arms in the air in a manner that caused him to suffer injuries to his shoulder. (Am.

Compl. ¶¶ 21–20, 57). Litchfield has added a few additional details such as the fact that Litchfield did not hit his ex-girlfriend with the door, did not kick or grab Rinehart, and Rinehart initiated the physical confrontation. (Id. ¶¶ 49–52).

Officer Defendants argue that force was justified in response to Litchfield's own aggression and resistance to the arrest. (Officer Defs.' Mot. at 6–9). Officer Defendants posit that Litchfield admits to this alleged instigation in the Amended Complaint where Litchfield states that Rinehart entered his house and "pushed Mr. Litchfield back." (Id. at 6 (citing Am. Compl. ¶¶ 21–24)). According to Officer Defendants, the use of the word "back" indicates that Litchfield pushed Rinehart first, and that Rinehart responded appropriately by tackling him. (Id. at 7).

Officer Defendants' strained reading of the Amended Complaint is unconvincing. The Court is required to take the facts in the Amended Complaint as true and to construe them in the light most favorable to Litchfield. Albright, 510 U.S. at 268. Under this standard, the phrase "Rinehart pushed Mr. Litchfield back" indicates only that Rinehart pushed him backwards, especially when read in context with other allegations in the Amended Complaint, such as the fact that Rinehart initiated the physical confrontation. (See Am. Compl. ¶ 52).

Further, the Court finds it unnecessary to re-analyze Litchfield's excessive force claims at this stage in the litigation because the facts are largely unchanged, and if anything, Litchfield has strengthened his claims by adding additional facts in the Amended Complaint. The Court, therefore, relies on and incorporates by reference its prior analysis

of this issue in the August 29, 2022 Memorandum Opinion and will again decline to dismiss Counts I and II.

### b. Unreasonable Search and Seizure (Count III)

In Count III, Litchfield alleges that Rinehart entered his home without a search warrant, his consent, or probable cause, and then refused to leave the house when asked. (Am. Compl. ¶ 78). Litchfield asserts that this conduct constituted an unreasonable search and seizure in violation of his Fourth Amendment rights. (Id.). Litchfield also alleges that he called the police because his ex-girlfriend assaulted him. (Id. ¶ 8). Contrary to Reese's Statement of Probable Cause, he says that he did not hit his ex-girlfriend with the door, and Rinehart saw her leave Litchfield's house unharmed. (Id. ¶¶ 45–50). He also asserts that he did not kick or grab Rinehart in an attempt to put him in a headlock. (Id. ¶ 51). At bottom, the Court finds that Litchfield has adequately stated a claim against Rinehart for unreasonable search and seizure.

The Fourth Amendment protects individuals "against unreasonable searches and seizures." Similar standards apply to unreasonable search and seizure claims as to excessive force claims because both claims are brought under the Fourth Amendment. See Tennessee v. Garner, 471 U.S. 1, 8 (1985) ("To determine the constitutionality of a seizure '[w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" (quoting United States v. Place, 462 U.S. 696, 703 (1983))).

Searches and seizures are "reasonable under the Fourth Amendment if, given the facts known to the officer, there is probable cause to believe that a crime has been or is

being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). In evaluating whether

probable cause exists, courts must look at "the reasonable conclusion to be drawn from the

facts known to the arresting officer at the time of the arrest." Id. The "arresting officer's

state of mind (except for the facts that he knows) is irrelevant to the existence of probable

cause." Id. at 153. Thus, it is helpful to look at "the suspect's conduct as known to the

officer, and the contours of the offense thought to be committed by that conduct." Graham

v. Gagnon, 831 F.3d 176, 184 (4th Cir. 2016) (quoting Pritchett v. Alford, 973 F.2d 307,

314 (4th Cir. 1992)). Specifically, courts can consider the "information actually possessed

by the officer[s] at the critical time, or that was then reasonably available to [them], and in

light of any exigencies of time and circumstance that reasonably may have affected the

officer[s'] perceptions." Id. (quoting Pritchett, 973 F.2d at 312).

Officer Defendants argue that Rinehart had probable cause to arrest Litchfield

because even if Litchfield did not hit his ex-girlfriend with the door, he assaulted her by

kicking her in the back of her leg. (Officer Defs.' Mot. at 8). The Statement of Probable

Cause[2] says that Rinehart saw Litchfield hit his ex-girlfriend with the door and that

---

[2] Litchfield argues the Court cannot consider the Statement of Probable Cause in its analysis of the Officer Defendants' Motion to Dismiss without improperly converting the motion into one for summary judgment. (Mem L. Supp. Litchfield's Resp Opp'n Officer Defs.' Mot. ["Opp'n Officer Defs.' Mot."] at 8–9, ECF 47-1). Although Litchfield is correct about the general rule against extrinsic evidence while resolving a Rule 12(b)(6) motion, the rule is subject to several exceptions. For example, a court may consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic, see Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). A court may also consider documents referred to and relied upon in the complaint—"even if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001). Here, the Statement of Probable Cause is clearly integral to the

Reinhart arrested him "for the assault that occurred in his presence." (Statement Probable Cause at 3, ECF No. 45-2). When Reese arrived, she had a conversation with Litchfield's ex-girlfriend, who told Reese that Litchfield kicked her, and Reese observed "bright red discolorations" on her legs. (Id. at 2–3). Officer Defendants contend that because Litchfield fails to allege that he did not kick his ex-girlfriend, he fails to show a lack of probable cause. (Officer Defs.' Mot at 8–9).

Officer Defendants' argument misses the mark because it focuses on facts known to a non-party officer and not Rinehart, the arresting officer. See Devenpeck, 543 U.S. at 152 (in a probable cause evaluation, courts look at "the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."). In the Statement of Probable Cause, Reese says that Rinehart made the arrest because he saw Litchfield hit his ex-girlfriend with the door, not because Litchfield kicked her. (Statement of Probable Cause at 2–3). After Rinehart and Lee began restraining Litchfield, Reese alone spoke to Litchfield's ex-girlfriend about the alleged kick, and she observed the discoloration on her legs. (Id.). From this account, the Court concludes that Rinehart was unaware of Litchfield's alleged kick, and Litchfield has adequately alleged that Rinehart did not otherwise have probable cause. Accordingly, the Court will not dismiss Count III.

---

Amended Complaint, which brings claims for unreasonable search and seizure and malicious prosecution. Litchfield also refers to the Statement of Probable cause in the Amended Complaint. (Am. Compl. ¶¶ 45–47). Accordingly, the Court will consider it in its analysis of Officer Defendants' Motion.

### c.      Malicious Prosecution (Count V)

Officer Defendants argue also that Litchfield's claim for malicious prosecution against Rinehart must be dismissed because Rinehart had probable cause. (Officer Defs.' Mot. at 9). Malicious prosecution is a tort that allows individuals to recover damages from those "who had initiated or caused the initiation of criminal proceedings despite having 'no good reason to believe' that criminal charges were 'justified by the facts and the law.'" Thompson v. Clark, 596 U.S. 36, 44 (2022) (quoting T. Cooley, Law of Torts 180 (1880)). There are three elements for a malicious prosecution claim under 42 U.S.C. § 1983: "(i) the suit or proceeding was instituted without any probable cause; (ii) the motive in instituting the suit was malicious . . . ; and (iii) the prosecution terminated in the acquittal or discharge of the accused." Id. (citing Cooley at 181) (internal quotation marks omitted). These elements are similar to the Maryland common law standard, which provides that a plaintiff must prove: "1) a criminal proceeding instituted or continued by the defendant against the plaintiff; 2) without probable cause; 3) with malice, or with a motive other than to bring the offender to justice; and 4) termination of the proceeding in favor of the plaintiff." Candelero v. Cole, 831 A.2d 495, 499 (Md.Ct.Spec.App. 2003) (quoting Heron v. Strader, 761 A.2d 56, 59 (Md. 2000)). "Malice, though a separate element of the tort, may be inferred from the lack of probable cause." Talley v. Anne Arundel Cnty., No. RDB-21-347, 2021 WL 4244759, at *12 (D.Md. Sep. 17, 2021) (quoting DiPino v. Davis, 729 A.2d 354, 374 (Md. 1999)).

As the Court explained above, Litchfield has adequately alleged a lack of probable cause, and it will not dismiss the malicious prosecution claim.

## III. CONCLUSION

For the foregoing reasons, the Court will grant the BPD Motion (ECF No. 41) and deny the Officer Defendants' Motion (ECF No. 45). Officer Defendants shall ANSWER the Amended Complaint as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. A separate Order follows.

Entered this 9th day of November, 2023.

/s/
George L. Russell, III
United States District Judge
